### DETERMINED IN THE

# THIRD DEPARTMENT

### AT

# GENERAL TERM,

## June, 1875.

---

THE PEOPLE OF THE STATE OF NEW YORK, Respond-
ents, v. THE CITY OF ALBANY, THE ALBANY AND
GREENBUSH BRIDGE COMPANY AND ANOTHER, Appel-
lants.

*Right of city to dispose of its property — when court of equity will interfere — Ferry
franchises — sale of, by municipal corporation.*

Although a city, in a certain sense, holds all its property, franchises and powers
in trust for its inhabitants, yet such property may be sold and conveyed by it,
except where the property has been conveyed to it in trust for a specific pur-
pose within its proper province, in which case a court of equity will interfere
to prevent a misappropriation of the fund or a misuse of the property.

All property of a private nature belonging to a corporation, upon which no spe-
cific trust is imposed, may be sold by the corporation; but property of a public
nature, such as streets, etc., so long as they are held for the public·use, cannot
be sold.

Where the legislature has granted to a city the exclusive right to establish and
control the ferries therein, and a ferry has been established and for a long time
maintained at a particular point therein, the city may, at its pleasure, sell and
convey the real estate owned by it in connection with such ferry to any person,
provided the public be not cut off, by the sale, from the means of inter-
communication.

Appeal from an order made at the Special Term, granting an
injunction restraining the city of Albany from conveying to the

Albany and Greenbush Bridge Company what is known as the south ferry property, and the real estate connected therewith, and restraining the bridge company from taking or using the said premises for the purposes of erecting a bridge over the Hudson river at that point.

*A. J. Colvin* and *A. J. Parker*, for the City of Albany and the Albany and Greenbush Bridge Company, appellants.

*Grenville Tremain*, for the Mayor of Albany.·

*H. Smith* and *W. P. Prentice*, for the respondents. The granting and continuing of injunctions rests in the discretion of the court, to be governed by the nature and circumstances of the case. When granted upon a thorough examination of the whole case, *pendente lite*, where immediate relief is necessary to prevent irreparable injury, and its continuance involves nothing of importance except delay until the case can be tried and its issues upon important questions decided, the action of the court below will not be reviewed. (*Vandewater* v. *Kelsey*, 1 N. Y., 533; *Selden* v. *Vermilye*, id., 534; *Paul* v. *Munger*, 47 id., 469.) And this is the case, even though the answer deny the equities of the complaint. (*Roberts* v. *Anderson*, 2 Johns. Ch., 202; *Carpenter* v. *Danforth*, 19 Abb., 225; *Attorney-General* v. *Cohoes Co.*, 6 Paige, 133; *Malcolm* v. *Miller*, 6 How. Pr., 456; *Dubois* v. *Budlong*, 15 Abb., 445; *Litchfield* v. *Pelton*, 6 Barb., 187.) The power to grant the injunction in the first place cannot be denied. (*Attorney-General, etc., of N. Y.* v. *The Mayor, etc.*, 3 Duer, 119; *People* v. *Sturtevant*, 2 N. Y., 263; *People* v. *Mayor, etc.*, 9 Abb., 253; *People* v. *Vanderbilt*, 26 N. Y., 287; *Lawrence* v. *Mayor*, 2 Barb., 577; *Benson* v. *Mayor*, 10 id., 223.) The right of the plaintiffs to maintain this suit and seek this remedy, cannot be questioned. (*The People* v. *The Mayor*, 32 Barb., 102; *The People* v. *The Mayor*, 10 Abb. Pr., 144; *Bensen* v. *The Mayor*, 10 Barb., 223; *The People* v. *The Canal Board*, 55 N. Y., 390; *The People* v. *Vanderbilt*, 38 Barb., 282.) The corporation of the city of Albany has not the right to sell the " south ferry property " to the Albany and Greenbush Bridge Company. (*People* v. *Kerr*, 27 N. Y., 189; *Davis et al.* v. *The Mayor, etc., of N. Y. et al.*, 14 id.,

506; *Kellinger* v. *Forty-second St., etc., R. R. Co.,* 50 id., 208.)
The charter (see title 1, § 3, and title 3, § 13; Laws of 1870, p. 159)
gives only the power " to establish, license and regulate all ferries,"
and not to destroy a ferry in existence before the act was passed.
No additional powers in the common council are to be inferred.
This ferry is held for the public use, and the only rights the city
of Albany has over it are as of a *trust publici juris,* not for the
people of the city alone, but for the people of the whole State, and
as an agent. (*People* v. *Kerr,* 27 N. Y., 181; *Davis and ors.* v.
*Mayor, etc., of New York,* 14 id., 506; *People* v. *Vanderbilt,* 38
Barb., 282; *Kellinger* v. *Forty-second Street, etc., R. R.,* 50 N.
Y., 208, and cases above cited.)

BOARDMAN, J.:

By an act of the legislature (chap. 269, Laws of 1872) the Albany
and Greenbush Bridge Company was constituted a body corporate,
with power to build a bridge across the Hudson at Albany, at some
point to be determined by commissioners in the act named. By
this act the bridge company was authorized to take and hold the
necessary real estate for that purpose. The bridge company was
duly organized under said act, the capital stock subscribed, and,
in the fall of 1874, the site of said proposed bridge was located
opposite the south ferry property. This south ferry property had
long been owned by the city of Albany, and used in connection
with a ferry at that point between Albany and Greenbush. In
October, 1874, such proceedings were had by and between the
bridge company and the city, that the common council of the city
passed a resolution for the sale of this south ferry property to the
bridge company, for the sum of $23,500. This resolution was
vetoed by the mayor, but was, on the seventh of December there-
after, passed over the mayor's veto. In connection with the reso-
lution for the sale as finally passed, provisions, conditions, contracts
and penalties were imposed, or to be imposed, in connection with
the sale and conveyance of the property, upon the bridge company,
to obviate, as far as was thought practicable, any danger of obstruc-
tion to the navigation of the river. These resolutions and provi-
sions were acceded to by the bridge company, and made a part of
the contract for the purchase of the real estate.

At this stage of the business this action was commenced, and soon after the injunction was procured. The principal, if not the only, reason assigned for granting the order, was this: That the city owned the south ferry real estate, in connection with the ferry, by such a title, and under such trusts, that a sale thereof, or of such real estate, was impossible, illegal, and in violation of the trust; that the ferry franchise and property belonged to the city, and was and is inalienable by the city without legislative sanction.

Upon this appeal, we are called upon to decide whether this view taken by the learned judge at Special Term is correct, or whether, on the contrary, the city has not the right, power and authority to sell the real estate in the same manner and with the like effect with any other lands owned by it. We think the court at Special Term was right in saying that was the only subject in dispute. The right of the legislature to pass the act of 1872 is conceded. The right of the Albany and Greenbush Bridge Company to erect a bridge between Albany and Greenbush, under and by virtue of that act, must also be conceded. The location of the bridge cannot be a subject of controversy. If the city cannot sell this real estate, and the bridge company cannot acquire title thereto, the location at that point is settled and rendered impossible; but if title can be made, the location at that point may be sustained, so far as any determination of this appeal can affect it. Nor is it of any importance whether any location of the bridge has yet been made. The effort to purchase is with the intent to locate at that point. For that purpose, the company has the right to acquire real estate; and this court cannot adjudge, upon this application, that the company cannot, within the act of the legislature, purchase this property, for the reason that it is not necessary. Equally foreign from our present consideration are the possible or even probable consequences to result to commercial and business interests from the erection of a bridge at the proposed locality. We have no power to enjoin the building of a bridge sanctioned by the legislature, nor have we any control over its location, except as other interests and rights are visibly and wrongfully affected. Divested of these extraneous matters, there remain to be decided two questions only: Has the city the right to sell and convey to the bridge company the real estate, known as the south ferry property, for the uses

and purposes contemplated by said company? If it has not that right, can the people of the State of New York maintain this action to restrain the city, or are they proper parties plaintiff in this action? The plaintiffs claim that the city has not the power of sale, because it holds the property in trust, and such sale would be in violation of such trust. Neither the complaint nor any of the moving papers assert the existence of any such trust, or claim relief by reason of any threatened breach of trust on the part of the city or its officers. Does such a trust as will prevent this sale exist? In a certain sense the city holds all its property, franchises and powers in trust for the inhabitants. But it is not contended that property so held may not be sold and conveyed as effectually as by an individual. But where the property is conveyed to the municipal corporation in trust for a specific purpose within the proper province of a corporation, equity will assert its jurisdiction to prevent a misappropriation of the fund or a misuse of the property. Is this real estate held by such a title? By the Dongan charter, power was given to Albany to establish, etc., all ferries, etc., "necessary, needful and convenient for the inhabitants of said city and the parts adjacent, and for travelers there." The franchise thus given is not exclusive. Afterward the legislature of the State of New York, in which the power alone existed, gave to the city the *exclusive* right to establish and control ferries. (Laws of 1826, p. 201, § 48; 1842, p. 361; Laws of 1870, p. 159, § 3.)

By these acts, the city of Albany has acquired not merely a legislative power, but a proprietary right. (*Aikin* v. *Western R. R. Co.*, 20 N. Y., 370.) If the city was thus the absolute owner of this franchise and property by legislative grant, it could sell and convey such corporate estate at its pleasure. (*Costar* v. *Brush*, 25 Wend., 628.) It was held as its city hall, or jail, or other property, and was in no sense a trust estate inalienable. All property of a private nature belonging to a corporation may be sold. The right of sale, if not expressed in its charter, will be implied. The right to hold such property carries with it the right by implication to sell; but property of a public nature, such as streets, squares and parks, so long as they are held for the public use, cannot be sold. Doubtless the same rule would apply to a ferry franchise if the public were, by its sale, to be shut off from the means of inter-communi-

cation. In the present case the real estate in question is private property, kept for profit in connection with the ferry franchise. The location of the ferry is in the discretion of the city. It need not necessarily be in its present location. If its site is removed to another point, this real estate is no longer necessary for the city, and may be sold. Should a bridge be erected near this ferry, so as to render it worthless and incapable of being run with profit, it cannot reasonably be contended that the city would not have the right to convert this real estate to other uses, or to sell it. The same would be true if the city removed the ferry to some other point. The real estate is not therefore any part of the ferry franchise; nor is it held by any inalienable title arising from the terms of the grant, or the uses for which it was granted or is used. If the city has the power to convey, the location of the bridge at that point is not in itself objectionable. As the ferry is for the public use and convenience, so will the bridge be. Experience is fast demonstrating that bridges are better and more useful than ferries. The rights of trade, commerce and travel by the course of the river, are to be recognized and protected; but such rights are not superior to those of trade and travel across the river, and each must yield something of its best interests to the necessities of the other.

Having concluded that the south ferry real estate was alienable by the city, and that the contemplated sale was not illegal or in violation of any trust or duty by the city of Albany, it will necessarily follow that this action cannot be maintained. Hence, it becomes unnecessary to consider the right of the people to bring this action.

If any injury shall arise by the wrongful dissolution of this injunction, it will fall most heavily upon the bridge company, if it shall proceed to expend its money in the erection of a bridge before the final termination of this action. As this decision is not final and conclusive, the bridge company will act at its peril in the further prosecution of its enterprise. Such consequences are a sufficient guarantee against any reckless or indiscreet conduct upon its part.

I think the order of the Special Term granting the injunction should be reversed, with ten dollars costs and expenses of printing,

to be paid by the plaintiff to appellants, and the motion for an injunction denied with ten dollars costs.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

Ordered accordingly.